**Anthony PARASCO and Tammy Parasco, Plaintiffs,**

v.

**PACIFIC INDEMNITY COMPANY, Defendant.**

No. 94–CV–5737.

United States District Court, E.D. Pennsylvania.

April 4, 1996.

See also, 870 F.Supp. 644.

Alan H. Casper, Philadelphia, PA, for Plaintiffs.

Eric D. Freed, James D. Dendinger, Cozen and O'Connor, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

We address today the motion for summary judgment filed by the defendant, Pacific Indemnity Company ("Pacific"), in this diversity case arising under Pennsylvania law. The plaintiffs are Anthony and Tammy Parasco (the "Parascos"), a husband and wife who held a homeowners' insurance policy issued by Pacific. On June 23, 1993, the Parascos' home and its contents were destroyed by fire. The Parascos subsequently made a claim for insurance proceeds under the policy. After conducting an investigation, Pacific concluded that Mr. Parasco had set the fire, and refused to pay the Parascos' insurance claim. This lawsuit ensued. In their complaint, the Parascos allege that Pacific is liable to them under four theories: (1) breach of contract; (2) breach of the covenant of utmost fair dealing; (3) bad faith under 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1994); and (4) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. §§ 201–1—201–9.2 (1993) (the "CPA").[1] Pacific responded with an answer

---

1. In a previous ruling, we dismissed Count IV of the complaint to the extent it alleged that Pacific

and counterclaim, in which it denies the Parascos' allegations and asserts that it is entitled to recover all payments it made under the policy, as well as the expenses it incurred investigating the loss. At the conclusion of the discovery period, Pacific submitted the instant motion, in which it argues that it is entitled to summary judgment not only on the entirety of the Parascos' complaint, but also as to its counterclaim. We turn now to address Pacific's motion.

## I

We begin by summarizing the facts educed during the discovery period. Mr. Parasco is a real estate investor who earns his living by purchasing, improving, and reselling residential properties. In May of 1992, the Parascos purchased three acres of land in Stony Creek Mills, Pennsylvania, and began constructing a log cabin home (the "house") there later that year. To finance this endeavor, the Parascos borrowed a total of approximately $170,000 from two banks: the Great Valley Savings Bank ("Great Valley") and the National Bank of Boyertown ("Boyertown"). The Parascos also applied for a home equity loan from the Blue Ball National Bank ("Blue Ball"). As part of the loan application procedure, Great Valley required the Parascos to submit tax returns from the previous two years and a financial statement describing the fiscal condition of their business interests. Likewise, Boyertown and Blue Ball requested that the Parascos provide copies of their tax returns as part of the loan application.

The tax returns and other financial data that the Parascos submitted to the banks were fraudulent. For example, the tax return they filed with the federal government for 1991 reflected an adjusted gross income ("AGI") of $12,896. The tax return contained a Schedule "C," which showed that the Parascos had not generated any income from their import-export business. For 1992, the Parascos submitted a tax return indicating an AGI of $1,115. The attached Schedule "C" showed a loss of $16,360 incurred by the

"Parasco Investment Properties" business. The tax returns offered by the Parascos in support of their loan applications told a different story, however. The 1991 tax return submitted to Great Valley indicated an AGI of $179,864; and the 1991 and 1992 tax returns provided to Boyertown and Blue Ball showed AGIs of $142,712 and $154,480, respectively. Mr. Parasco has conceded that the data he provided to the banks did not comport with his tax returns, that he forged the signature of his tax preparer on the 1991 return submitted to Boyertown, and that he changed the tax preparer's social security number on the fraudulent 1991 tax return.

The record indicates that before the Parascos moved into the house in March of 1993, Mr. Parasco had already initiated efforts to sell it. In February of 1993, Mr. Parasco contacted Barbara Wagner, a real estate agent, to discuss listing the house for sale. Mr. Parasco insisted that it would sell for $350,000. Ms. Wagner visited and inspected the house on February 8, and informed Mr. Parasco that his expectation as to the property's value was unrealistically high. Soon after this contact, and as an apparent result of their disagreement over the property's value, discussions between Ms. Wagner and Mr. Parasco concluded.

Mr. Parasco continued his efforts to sell the house through the spring of 1993. In April, Mr. Parasco placed an advertisement in a Reading, Pennsylvania newspaper, offering the property for sale for $350,000. The next month, Mr. Parasco contacted Diane Podlesny, another real estate agent, to inquire about selling the house. Ms. Podlesny states in her affidavit that she visited the property and informed Mr. Parasco "that $350,000 was a completely unrealistic listing price for the home," and that a figure of $180,000 to $200,000 was more reasonable. Ms. Podlesny also informed Mr. Parasco that due to the nature of the real estate market in the area, the property would likely remain on the market for at least one year before it would sell. Finally, Mr. Parasco notified Ms. Podlesny in June that he was ready to list

---

violated the CPA by violating Pennsylvania's Unfair Insurance Practices Act, 40 Pa.Stat.Ann. §§ 1171.1—1171.15 (1992). *Parasco v. Pacific*

*Indem. Co.,* 870 F.Supp. 644, 646–47 (E.D.Pa. 1994).

the property for sale. Indeed, on June 23, the day of the fire, Mr. Parasco made a June 25 appointment with Ms. Podlesny, so that she could visit the house and more exactly determine an appropriate listing price. Mr. Parasco cancelled this appointment in the aftermath of the fire.

On June 24, Leon Huey, the Pennsylvania State Police Fire Marshal, investigated the circumstances surrounding the fire and concluded that it was incendiary in nature.[2] Pacific retained a private cause and origin investigator, who likewise concluded that the fire resulted from arson.[3] In light of this information, Pacific launched its own investigation regarding the claim. On July 1, the Parascos met with Mark Zimmerman, a Pacific insurance adjuster who asked the Parascos to execute a release allowing Pacific access to the financial information they submitted to the banks. The Parascos refused to sign the release, despite repeated requests.

Pacific then conducted an examination of the Parascos under oath. In connection with the examination, the Parascos submitted tax returns from 1990, 1991 and 1992 to Pacific, which reflected AGIs of $68,730, $12,896 and $1,115, respectively. Pacific then questioned Mr. Parasco concerning the materials he submitted to Blue Ball in support of his loan application. Mr. Parasco testified that he had obtained the loan file personally from Blue Ball. According to the Blue Ball executive who dealt with Mr. Parasco, the file contained the 1991 and 1992 tax returns and the loan application when it was given to Mr. Parasco. However, the file that Mr. Parasco turned over to Pacific did not contain the tax returns. Mr. Parasco further stated that he had removed the financial statement from the file before providing it to Pacific. The exchange proceeded as follows:

Q. What exactly did you take out of the file before you gave it to [your attorney]?

A. Scratch paper, things that weren't relevant to—it was a very thin file. It wasn't like a whole bunch of things. It was this,

the financial statement, and scratch paper. And I don't remember if there was anything else.

Q. What happened to the financial statement? Was that given to [your attorney]?

A. Yes.

Mr. Parasco's depo., 8/27/93, p. 401. When Pacific's attorney requested production of the financial statement, Mr. Parasco's attorney conceded that he possessed it, but refused to produce it. Later, Mr. Parasco's attorney denied that he possessed the financial statement. Moreover, Mr. Parasco specifically denied removing the tax returns from the file. The examination was then terminated at Mr. Parasco's insistence.

By the time Mr. Parasco's examination resumed in November of 1993, Pacific had received copies of the loan files held by Great Valley and Boyertown, pursuant to releases executed by Mr. Parasco. Thus, Pacific had become aware of the fraudulent tax returns Mr. Parasco submitted in support of his loan applications. When Mr. Parasco was confronted with the conflicting figures contained on the tax returns he submitted with the federal government and the fraudulent returns he presented to the banks, he attempted to explain the discrepancy by stating that the tax returns submitted to the banks represented a mere "speculation of income," prepared for the purpose of obtaining financing from the banks. Mr. Parasco further testified that he did not know that the banks would rely on the information provided on the tax returns in processing his loan applications, and that he had no intention of deceiving the banks.

Mr. Parasco was also questioned concerning efforts he had undertaken to sell the house. Over the course of the extended inquiry into these efforts, Mr. Parasco never mentioned the advertisement offering the house for sale he placed in the newspaper. Further, while he indicated that he had had a number of informal discussions with real estate agents during the first half of 1993

---

2. Mr. Parasco was arrested on March 9, 1994 and charged with arson and related offenses. His criminal case is currently pending in the Berks County Court of Common Pleas.

3. Mr. Parasco has retained his own expert, who testified in deposition as to his opinion that the fire resulted from an accident.

regarding the house's attributes and value, Mr. Parasco specifically stated that he was not actively trying to sell the house at the time of the fire, and that he had no specific date in mind regarding when he might put the house up for sale. Mr. Parasco also testified as to his belief that the house would sell for approximately $400,000, and was questioned concerning the grounds for his opinion, as follows:

> Q. Aside from the appraisal we have seen here for $225,000, the one you testified about and the insurance appraisal, did anyone else ever give you an opinion as to what the house would be worth if you put it on the market, what you would get for it?
>
> A. No. No one can tell you how much the house is worth.
>
> Q. I am talking about after it is done up to the day of the fire, did anybody else say, well, I think it is worth 400; I think it is worth 250; 350; whatever?
>
> A. No.
>
> Q. Nobody ever put a number on it?
>
> A. No. First of all, it is worth whatever I want to ask for it. No one can come up—
>
> . . . . .
>
> Q. You never consulted with anyone to see?
>
> A. No.

Mr. Parasco's depo., 12/13/93, pp. 163–64.

## II

### A. *The Summary Judgment Standard*

This Court is authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any genuine factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510–11). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512. With this standard in mind, we turn now to examine whether there exists a disputed issue of material fact with regard to any of the four claims set forth in the Parascos' complaint.

### B. *Breach of Contract*

The insurance contract contains the following clause: "We do not provide coverage if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss." Thus, Pacific argues that it is entitled to summary judgment with respect to the Parascos' contract claim, since the policy at issue has been rendered void by Mr. Parasco's conduct. Specifically, Pacific contends that Mr. Parasco swore falsely (1) by testifying that he did not intend to deceive the banks when he submitted fraudulent tax returns in support of his loan applications; and (2) with respect to the attempts he made to sell the house before the fire.

We therefore must award summary judgment to Pacific if it can demonstrate that no genuine issue of fact exists as to whether Mr. Parasco either misrepresented or concealed a material fact relating to the insurance contract. *See New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir.1991) (under Pennsylvania law, in the fraud in the application context, policy is void if insurer can show that (1) representation was false; (2) representation was made in bad faith; and (3) representation was material); *American Franklin Life Ins. Co. v. Galati*, 776 F.Supp.

1054, 1059 (E.D.Pa.1991) (same). In their opposition to Pacific's motion, the Parascos concede that the documents submitted to the banks were fraudulent, but argue that a jury issue has been raised as to whether Mr. Parasco attempted to conceal his bank fraud from Pacific, and alternatively, that the misrepresentations were not material. We now examine these arguments.

### 1. *Misrepresentations*

 With respect to the first contention, we conclude that the record establishes beyond reasonable dispute that Mr. Parasco made misrepresentations under oath regarding both the bank fraud he committed in connection with the loan applications and the attempts he made to sell the house prior to the fire. In reaching this conclusion, we are mindful that the summary judgment standard requires us to view the evidence in the light most favorable to the non-moving party. We also note, however, that the party opposing the motion cannot "simply rest on mere denials," but must instead point to specific facts showing that there is a genuine issue for trial. *First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987).

First, we conclude that Mr. Parasco swore falsely with respect to his interaction with Blue Ball. During the course of his examination, Mr. Parasco testified that he did not submit tax returns in connection with the loan application and that he did not remove the fraudulent tax returns from the Blue Ball loan file before he turned it over to Pacific. The unrebutted affidavit of the Blue Ball executive with whom Mr. Parasco interacted states Mr. Parasco submitted the fraudulent 1991 and 1992 tax returns with his loan application, and that the file contained the fraudulent tax returns when it was turned over to Mr. Parasco. Mr. Parasco has not pointed to any fact of record that would tend to cast doubt on the Blue Ball executive's affidavit. Thus, we must conclude that Mr. Parasco made misrepresentations to Pacific regarding the Blue Ball loan application in an effort to conceal his bank fraud from his insurer.

 Moreover, we are compelled to conclude that Mr. Parasco lied to Pacific when he testified that he did not intend to deceive Great Valley and Boyertown by submitting the fraudulent tax returns. Mr. Parasco's argument here is that the fraudulent tax returns were not tax returns at all, but instead mere "speculations" of income. This assertion is belied, however, by the unrebutted evidence provided by the bank executives, who have averred that they required copies of tax returns filed with the government in processing loan applications. Moreover, Mr. Parasco has conceded that he forged his tax preparer's signature on the tax returns submitted with the loan applications. This is powerful, convincing evidence of an intent to deceive: Mr. Parasco obviously wanted the banks to believe that the tax returns had been prepared by an accountant. Accordingly, since Mr. Parasco has identified no fact of record from which a jury could infer that the fraudulent tax returns were not submitted to the banks for the purpose of deceiving them, the evidence leaves no doubt that Mr. Parasco lied to Pacific in this respect as well.

Finally, we conclude that the only reasonable conclusion a jury could reach is that Mr. Parasco made misrepresentations to Pacific regarding efforts he had undertaken to sell the house before the fire. As we noted above, Mr. Parasco testified that he was not actively trying to sell the house at the time of the fire, and that he had no specific date in mind as to when he might list the house for sale. Mr. Parasco further stated that no one had informed him that the house would sell for considerably less than $400,000. Again, however, Mr. Parasco's statements are flatly rebuked by the record. The affidavits submitted by the real estate agents Mr. Parasco contacted indicate that he attempted to place the house on the market on the very morning of the fire, and that he had been told that the house would more likely sell for $180,000 to $200,000.

Indeed, in their opposition to the instant motion, the Parascos do not contest these affidavits, but instead argue that summary judgment should be denied since there is no evidence of either a contract to sell the house or the placement of "for sale" signs on the property. Of course, this argument evades the issue. Mr. Parasco was asked if he was actively trying to sell the house during the

time leading up to the fire. He responded that he had no such plans. The record indicates, however, that he had indeed undertaken such efforts. Accordingly, we must also conclude that Mr. Parasco made misrepresentations to Pacific regarding the attempts he made to sell the house.

### 2. *Materiality*

■ The Parascos' alternative argument is that the misrepresentations are not material. The question of materiality is generally considered one of fact and law, but if the facts misrepresented are so obviously important that "reasonable minds cannot differ on the question of materiality," then the question becomes one of law that the court can decide at the summary judgment stage. *Gould v. American–Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir.1976); *see Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d.Cir.) (where statements are indisputably made and indisputably false, "the question seems purely one of law"), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984). In the context of an insurer's post-loss investigation, "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine*, 725 F.2d at 183; *see Long v. Insurance Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir.1982) ("a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented").

The Parascos argue that the fire's cause was accidental in nature; and that as a result, the misrepresentation of facts that tend to show that the Parascos had a motive to commit arson is immaterial to the issue at hand. The Second Circuit has considered and rejected this precise argument, concluding that the issue of materiality is to be determined with regard to the time the investigation is proceeding, as follows:

> It thus appears that materiality of false statements is not determined by whether or not the false statements deal with a subject matter later determined to be un-

important because the fire and loss were caused by factors other than those with which the statements dealt. False sworn answers are material if they might have affected the attitude and action of the insurer. They are equally material if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate.

*Fine*, 725 F.2d at 184.

■ The false statements at issue in the instant case, in light of the standard set forth above, are clearly material to Pacific's investigation of the loss. At the time Pacific launched its investigation, it had knowledge that both the fire marshal and an independent cause and origin investigator had concluded that the fire was incendiary in nature. Thus, the steps it took to ascertain whether the Parascos had some motive to commit arson were entirely reasonable and prudent. Inquiries into whether the Parascos were in a stable financial posture were therefore material to the issue of motive. *See Stover v. Aetna Casualty & Sur. Co.*, 658 F.Supp. 156, 160 & n. 3 (S.D.W.Va.1987) (noting that the financial state of the insured is a material line of inquiry in cases of arson). Once Pacific determined that the Parascos had lied to the banks in order to obtain the loans and that their financial state was somewhat precarious, it fashioned the theory that Mr. Parasco needed to sell the house quickly, in order to repay the banks before the monthly payments began to accumulate.[4] It pursued this theory by questioning Mr. Parasco as to the attempts he made to sell the house in the months leading up to the fire. Such information was likewise material, as it also concerned the issue of motive.

The undisputed facts before us compel the conclusion that during the course of Pacific's investigation of the loss at issue, Mr. Parasco made misrepresentations concerning both the fraud he perpetrated on the banks during the loan application process and his efforts to sell the house prior to the fire. Moreover, we

---

**4.** This theory finds support in the record. In her affidavit, Ms. Podlesny avers that Mr. Parasco told her he needed to sell the house quickly, so as to "get out from under the banks."

have concluded that these misrepresentations concerned issues material to the investigation. Thus, there can be no dispute that the Parascos breached the fraud and concealment clause of the insurance policy; and as a result, they cannot recover under the contract. Accordingly, we will award summary judgment to Pacific as to the Parascos' contract claim.

### C. Extra–Contractual Claims

Pacific argues that it is entitled to summary judgment as to the Parascos' three extra-contractual claims as well. We turn now to address these issues.

#### 1. Breach of Covenant of Fair Dealing and Bad Faith Claims

In the second and third counts of their complaint, the Parascos contend that they are entitled to relief on the grounds that Pacific breached the covenant of utmost fair dealing and committed bad faith under 42 Pa.Cons.Stat.Ann. § 8371. Under § 8371, the court is empowered to provide relief in the form of pre-judgment interest, punitive damages, and costs and attorney's fees in the event it finds that an insurer acted in bad faith toward its insured in any action arising under an insurance policy. While § 8371 does not define bad faith, our Court of Appeals has recognized that the term has acquired a "peculiar and universally acknowledged meaning" in the insurance context, as follows:

> "*Insurance.* 'Bad faith' on the part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-

interest or ill will; mere negligence or bad judgment is not bad faith."

*Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)).

The court may also consider the provisions of Pennsylvania's Unfair Insurance Practices Act, 40 Pa.Cons.Stat.Ann. §§ 1171.1—1171.15 (1992) ("UIPA"), when determining whether an insurer has acted in bad faith. *Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1233 (1994).[5] Section 1171.5 enumerates a myriad of acts that could constitute "unfair claim settlement or compromise practices," including:

> (i) Misrepresenting pertinent facts or policy or contract provisions relating to the coverage at issue.

> . . . . .

> (iii) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

> (iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information.

40 Pa.Stat.Ann. § 1171.5(a)(10).

The Parascos' bad faith claim is based upon their contention that Pacific failed to conduct an objective and unbiased investigation after assuring the Parascos that it would do so, and that it denied their claim without a reasonable basis.[6] In their attempt to defeat the instant motion, the Parascos assert that Pacific conducted an "outcome determinative" investigation, the goal of which was not to determine the fire's cause, but to justify denial of the claim. A careful review of the record indicates, however, that the Parascos' insurance claim was denied after Pacific became aware of the following undisputed facts: (1) four separate

---

**5.** As we understand the decisions interpreting the interplay between the UIPA and the bad faith statute, a violation of the UIPA does not constitute bad faith *per se;* rather, the UIPA serves as a reference from which a court may determine whether an insurer has acted in bad faith in a given case.

**6.** The duty of fair dealing under Pennsylvania law requires the insurer to conduct its investigation in a fair and objective manner, and to deny an insured's claim only if good cause exists to do so. *Diamon v. Penn Mut. Fire Ins. Co.*, 247 Pa.Super. 534, 372 A.2d 1218, 1226 (1977). Thus, the Parascos' breach of covenant of fair dealing claim mirrors its bad faith claim. Accordingly, we address these claims together.

cause and origin investigators concluded that Mr. Parasco was responsible for setting the fire; (2) Mr. Parasco had motive and opportunity to set the fire; (3) Mr. Parasco had been arrested and formally charged with setting the fire by the Berks County District Attorney; (4) Mr. Parasco had submitted fraudulent financial information to the banks in order to finance construction of the home; and (5) Mr. Parasco attempted to conceal his bank fraud and his efforts to sell the house from Pacific. Thus, Pacific had good cause to deny the claim.

Moreover, nothing in the record suggests that Pacific conducted the investigation in a biased fashion, or for the improper purpose of evading its contractual duty to pay valid claims.[7] Indeed, the investigation included a thorough examination of Mr. Parasco, who was then afforded the opportunity to relate his version of the facts surrounding the incident. Mr. Parasco took that opportunity to lie under oath concerning matters material to the investigation. Under these circumstances, we conclude that the Parascos cannot prevail under § 8371. Accordingly, we must award summary judgment to Pacific as to the second and third claims in the Parascos' complaint.

## 2. The CPA Claim

The CPA allows "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes" to bring suit in the event he suffers ascertainable loss as a result of another's "fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa.Stat.Ann. §§ 201–9.2(a), 201–2(4)(xvii). This provision has been interpreted broadly, and encompasses a wide variety of misfeasance, including an insurer's promise to pay benefits it has no intention of paying. *See Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 46 (3d Cir.1992), and cases cited therein. The mere failure to pay a claim, however, is considered nonfeasance; and as such, it is not actionable under the CPA.

*Gordon v. Pennsylvania Blue Shield*, 378 Pa.Super. 256, 548 A.2d 600, 604 (1988).

The Parascos argue that they are entitled to relief under the CPA because Pacific: (1) refused to pay additional living expenses as called for in the policy; (2) conducted the investigation in a biased fashion; and (3) led the Parascos to believe that it would pay advances on the claim, when it had already decided it would deny the claim. As we noted above, however, Pacific's alleged failure to pay additional living expenses is nonfeasance and therefore not actionable under the CPA. Thus, to the extent the Parascos contend they are entitled to CPA relief based on Pacific's failure to pay, such argument must be rejected. Moreover, we have already concluded that the Parascos' allegation regarding the objectivity of the investigation lacks support in the record.

We now conclude that the record does not support the inference that Pacific represented to the Parascos that it would make advance payments when it had in fact decided to deny the claim. The Parascos assert that the misrepresentation is contained in an October 15, 1993 letter addressed to their attorney from Pacific's attorney. The letter memorialized Pacific's decision to make an advance payment of $5,000, and informed the Parascos as follows: "If, after 60 days from today's date, that [sic] Pacific Indemnity's investigation has not been completed, Pacific Indemnity will consider an additional advance payment to the Parascos, if such payment is warranted under the facts and circumstances as they then exist." The Parascos contend "that the purpose of [the] letter was to misrepresent and to mislead plaintiffs as to defendant's true decision on their claim." Plaintiff's Memo. at 15. As is clear from its plain language, however, the letter contains no representation that the claim would be paid, but merely that another advance might be made under certain conditions. Thus, the Parascos have

---

7. The Parascos point to various pieces of evidence in the record to support their contention that Pacific failed to investigate objectively. We have carefully reviewed this evidence, and conclude that it fails to demonstrate the conclusion the Parascos would have us reach. Accordingly, the Parascos have failed to produce any evidence suggesting that Pacific breached its duty of fair dealing in the manner in which it investigated the claim.

failed to raise a disputed issue of fact regarding their CPA claim. Accordingly, we will award summary judgment to Pacific as to the complaint's fourth count as well.

### D. *Pacific's Counterclaim*

■ In its counterclaim, Pacific seeks recovery of (1) the amount it paid to its insureds ($5,000) and their mortgagees ($167,-011.54); and (2) the expenses it incurred investigating the claim, including legal fees, pursuant to 18 Pa.Cons.Stat.Ann. § 4117. Pacific seeks an award of summary judgment as to its counterclaim by the instant motion. In their response to Pacific's motion, the Parascos do not address the merits of the counterclaim. Despite the plaintiffs' apparent unwillingness to defend the motion in this respect, we do not merely grant the motion as uncontested, but instead address the merits of Pacific's arguments. *See* Local Rule 7.1(c) ("In the absence of a timely response, the motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed.R.Civ.P. 56(c).").

■ Under Pennsylvania law, an insurer who denies liability to the insured but pays the mortgagee pursuant to the mortgagee clause of a fire policy may bring an action against the insured to recover the debt. *Taylor v. Seckinger*, 199 Pa.Super. 262, 184 A.2d 317, 319 (1962). An insurer is also entitled to recover the money it paid to the insured under the policy, if it is later determined that the insured violated the fraud and concealment provision of the insurance contract. *Perovich v. Glens Falls Ins. Co.*, 401 F.2d 145, 147 (9th Cir.1968). The facts regarding these issues are not in dispute: Pacific paid a total of $167,011.54 to the mortgagees as well as a $5,000 advance to the Parascos. Moreover, the Parascos are not entitled to collect under the policy by virtue of their breach of the fraud and concealment provision. Accordingly, we will award summary judgment to Pacific in the total amount of $172,011.54.

■ We cannot conclude, however, that Pacific is entitled to a summary judgment award as to its § 4117 claim. Section 4117 provides as follows:

**(a) Offense defined.**—A person commits an offense if the person does any of the following:

. . . . .

(2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

. . . . .

**(g) Civil action.**—An insurer damaged as a result of a violation of this section may sue therefor in a court of competent jurisdiction to recover compensatory damages, which may include reasonable investigation expenses, costs of suit and attorney fees. An insurer may recover treble damages if the court determines that the defendant has engaged in a pattern of violating this section.

18 Pa.Cons.Stat.Ann. § 4117. Pacific asserts that under the undisputed facts, "it is ... clear that plaintiffs engaged in a pattern of violating" § 4117. Defendant's Memo. at 66. We disagree. The Parascos have filed only one claim for an alleged loss; thus, there is inadequate support for a finding that they engaged in a pattern of insurance fraud. *Ferrino v. Pacific Indem. Co.*, No. 95–CV–0102, 1996 WL 32146, at *4 (E.D.Pa. Jan. 24, 1996) (no support for the proposition that a pattern of fraud could be established in a single insurance claim). Accordingly, the motion for summary judgment will be denied as to Pacific's § 4117 claim.

### III

For the reasons set forth above, Pacific's motion for summary judgment will be granted in part. An appropriate order follows.

### *ORDER*

AND NOW, this 2nd day of April, 1996, upon consideration of Defendant's Motion for Summary Judgment, and the Response

thereto, it is hereby ORDERED that said Motion is GRANTED in part as follows:

1. Summary Judgment is awarded to Defendant as to all counts of Plaintiffs' Complaint;

2. Summary Judgment is awarded to Defendant as to its Counterclaim under the policy in the amount of $172,011.54; and

3. The Motion for Summary Judgment is hereby DENIED with respect to Defendant's Counterclaim under 18 Pa.Cons.Stat. § 4117.