## Commonwealth v. Tillet

434

*Robert Rosner,* for Commonwealth.
*John Karoly,* for defendant.

BANACH, *J.,* November 29, 2007—On January 25, 2006, the Commonwealth charged the petitioner, Joel Tillet, and his co-defendant, Rondell McNeil, with a variety of offenses related to an alleged fraudulent insurance claim. After a preliminary hearing held on April 10, 2006, Magisterial District Judge Edward Hartman bound over charges of insurance fraud[1] and criminal conspiracy to commit false reports to law enforcement.[2] On October 18, 2006, after a series of continuances due in part to the death of Mr. Tillet's original attorney, the court held a hearing on the defendants' petition for writ of habeas corpus. After a hearing on the matter, submission of briefs, and legal analysis, this court denied the defendants' petition. A non-jury trial was held from January 9 to January 11, 2007. Defendant McNeil was acquitted of all charges and the petitioner in this appeal, Mr. Tillet, was found guilty of insurance fraud. On March 19, 2007, the petitioner was sentenced to 12 months of probation

---

1. 18 Pa.C.S. §4117(A)(2).

2. This charge should be listed under 18 Pa.C.S. §903, however it is listed under 18 Pa.C.S. §4117(A)(2) in the criminal information.

supervision and to make restitution to Ohio Casualty Insurance Company in the amount of $25, 690.97 and the District Attorney's Offices of Lehigh County in the amount of $150 for particular investigative costs. The petitioner filed his notice of appeal with the Superior Court on April 4, 2007 and submitted appellant's Pa.R.A.P. 1925(b) statement on May 25, 2007.

## SUMMARY OF FACTS

On March 19, 2003, petitioner Joel Tillet reported his 1998 Lincoln Navigator had been stolen from outside of an apartment located at 1346 North Fourteenth Street, Whitehall, Lehigh County, Pennsylvania. Officer Michael Arnold of the Whitehall Township Police Department responded to the scene and took the report. The petitioner indicated that he had driven his vehicle to 1346 Fourteenth Street and parked the car in the parking lot. He went inside of the apartment of a friend, and when he returned to the vehicle's location, the vehicle was no longer there. He stated that he locked the vehicle and possessed keys to the vehicle. The petitioner did not mention that there were any other drivers of the vehicle. On March 19, 2003, the petitioner also filed an insurance claim with the Ohio Casualty Insurance Company. The vehicle was not recovered. Payment for the insurance claim was made in the amount of $17,680.97, with an additional $8,000 paid by the insurance company to cover the loss of vehicle enhancements and accessories in the car when it was stolen. On April 11, 2003, the petitioner filed an affidavit of vehicle theft with the insurance company, which required that he explain some details regarding the vehicle and the circumstances surrounding its disappearance. Of particular importance in

this case, the petitioner indicated that he parked the vehicle at the home of his friend and co-defendant, Rondell McNeil, at approximately 12:30 a.m. The petitioner also wrote that he locked the car and enabled its alarm system. He further indicated that he was the last person to see the vehicle before it was noted missing at approximately 8 a.m. that morning. The petitioner endorsed the document, acknowledging that the information provided was true and accurate.

Subsequently, on February 25, 2004, Steven Williams, an attorney with the insurance company, interviewed the petitioner under oath about the circumstances of the vehicle theft. The petitioner stated to Attorney Williams that he was the primary driver of the vehicle, and that on the night of the theft he stayed at Mr. McNeil's house.

On December 14 or 15, 2005, and on January 25, 2006, the petitioner was interviewed by Detective Richard London of the Lehigh County Insurance Fraud Task Force. In these interviews, the petitioner admitted to lying to the police and the insurance company in earlier discussions about the theft. He also indicated that he was not present at the location of the vehicle theft on the night of the incident, that he did not stay at Mr. McNeil's residence, and that he was with his girlfriend when the vehicle was stolen from Mr. McNeil's residence. The petitioner also noted that Mr. McNeil was the primary driver of the vehicle. The petitioner admitted that he and Mr. McNeil fabricated a story about the details of the theft, and that they agreed upon a story prior to contacting either the police or the insurance company. The defendants invented the story because Mr. McNeil was concerned that his prior criminal record would make him a suspect in the case.

## DISCUSSION AND CONCLUSION OF LAW

The petitioner alleges five errors by this court in his appeal. First, the petitioner alleges that the court erred when it did not dismiss the criminal charges due to a violation of the corpus delicti rule. Second, the petitioner alleges that there was insufficient evidence to convict the petitioner of insurance fraud. Third, the petitioner argues that the misrepresentation at the crux of the criminal charges was de minimis at best and did not rise to a level of material misrepresentation to satisfy the criminal statute requirements. Fourth, the petitioner alleges that the court erred in allowing the Commonwealth to amend the information at the time of trial. Fifth, the petitioner alleges that the restitution imposed was improper and without legal or factual foundation. See Pa.R.A.P. 1925(b) stmt., pp. 1-2.

### *The Corpus Delicti Rule*

The petitioner argues that the court "erred by not dismissing the criminal surcharges pretrial considering the only evidence available to the Commonwealth to meet their burden was an alleged statement made by the [petitioner]." *Id.* at p. 1, ¶1.

The corpus delecti rule begins with the proposition that a criminal conviction may not be based upon the extrajudicial confession of the accused unless it is corroborated by independent evidence establishing the corpus delecti. See *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974). "The [corpus delecti] rule is intended to prevent a defendant from being convicted of a crime solely on the basis of his own statements, without independent proof that a crime has in fact been committed."

*Commonwealth v. Shoff,* 273 Pa. Super. 377, 379, 417 A.2d 698, 699 (1980) (citations omitted); see also, *Commonwealth v. Fried,* 382 Pa. Super. 156, 160, 555 A.2d 119, 120 (1989) (suggesting that the purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime has been committed). The corpus delecti, literally "the body of the crime," is defined as a wrong committed by criminal means, and consists of the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury. *Ware* at 365, 329 A.2d at 274. The criminal responsibility of a particular, identifiable person, *e.g.,* the accused, is not a requirement of the rule. See *Commonwealth v. Elder,* 305 Pa. Super. 49, 51, 451 A.2d 236, 237 (1982).

Under Pennsylvania law, the application of the corpus delecti rule occurs in two distinct phases. The first phase involves the court's application of a rule of evidence governing the threshold question of the admissibility of the confession. In this first phase of the rule's application, the court must determine whether the Commonwealth has proven the corpus delecti of the crimes charged by a mere preponderance of the evidence. If the court is satisfied that, on the evidence presented, it is more likely than not that a wrong has occurred through criminal agency, then the confession and/or admissions of the defendant are admissible. See *Commonwealth v. Tallon,* 478 Pa. 468, 387 A.2d 77 (1978). The second phase of the rule's application occurs after a confession has already been admitted into evidence. After the court has made its initial determination that the Commonwealth has proved the corpus delecti by a preponderance of the evidence and has ruled the confession to be admissible, the corpus delecti rule additionally requires that the Com-

monwealth prove to the jury's satisfaction beyond a reasonable doubt the corpus delecti of the crimes charged. *Commonwealth v. Lettrich,* 346 Pa. 497, 502, 31 A.2d 155, 157 (1943); *Commonwealth v. May,* 451 Pa. 31, 301 A.2d 368 (1973); *Tallon* at 475-76, 387 A.2d at 81; *Fried* at 160, 555 A.2d at 121.

Notably, the order of proof is within the trial court's discretion, such that the Commonwealth may be permitted to introduce the confession first, so long as the corpus is eventually established. See *Commonwealth v. Smallwood,* 497 Pa. 476, 442 A.2d 222 (1982). Additionally, a statement need not constitute an admission to each element of the crime because the criminal responsibility of the accused for the loss or injury is not a component of the rule. *Id.* See also, *Commonwealth v. Buck,* 426 Pa. Super. 26, 626 A.2d 176 (1993). Similarly, it is not fatal to the Commonwealth's case that the testimony offered to establish a corpus delecti is circumstantial and not direct. See *Commonwealth v. Leslie,* 424 Pa. 331, 337, 227 A.2d 900, 902 (1967).

In the present case, the petitioner was convicted of insurance fraud. At trial, the Commonwealth established that the petitioner gave several statements regarding the circumstances surrounding the disappearance of his vehicle. Officer Arnold testified that when he arrived at the scene, the petitioner provided him information that (a) he was the owner of the vehicle; (b) the petitioner drove it to the spot from which it was stolen; (c) the vehicle was locked when he parked it; (d) the petitioner was inside of a friend's apartment at the time of the theft; and (e) he maintained possession of the key to the vehicle. Further evidence was presented that the petitioner filled out an insurance claim form and gave information

to Edward Duffy, an investigator for the Ohio Casualty Insurance Company at the time. The information provided by the petitioner was much the same as the information provided to the police officer at the time of the theft, with some additional statements. The petitioner told Mr. Duffy that he went to see a friend and that he drove his vehicle to the location himself. He further explained that he possessed the only key to the vehicle. When he spoke to the attorney for the insurance company, Attorney Williams, the petitioner provided similar information and expanded on where he parked in the parking lot. Attorney Williams testified that the petitioner reported that he backed into a parking spot in the parking lot of the Spring Ridge Apartment complex and that he locked the vehicle, put the key in his pocket, and went inside of his friend's apartment. Furthermore, the petitioner told Attorney Williams that Mr. McNeil drove the vehicle in question on very rare occasions and that Mr. McNeil was not the primary driver. Attorney Williams further explained to the court that the insurance company's investigation is directed by the information that they are provided regarding when, where, and how a vehicle was stolen. 1/10/07 Trnscpt. p. 9, ll. 8-18. Having received and relied on this information from the petitioner, the Ohio Casualty Insurance Company paid the petitioner a total of $25,690.97. Juan Burgos, a neighbor of Mr. McNeil, provided testimony that during 2003, he observed Mr. McNeil operating a black Lincoln Navigator while living at the Spring Ridge apartments. Mr. Burgos also described observing a prior incident when the Lincoln Navigator in question was being broken into and the alarm sounded. Mr. Burgos stated that he alerted Mr. McNeil as to the incident, believing Mr. McNeil to have some connection

to the vehicle. Based on the evidence demonstrating that there was some indication that the Lincoln Navigator was primarily used by Mr. McNeil (contrary to the petitioner's original statement) and that the insurance company relied on the petitioner's initial statements to its detriment (payment of $25,690.97), the court determined it was more likely than not that a wrong had occurred through criminal agency, and allowed the admission of the petitioner's confession.

Detective London testified that he met with the petitioner in December 2005. After the detective told the petitioner that he had noticed inconsistencies in his prior statements, the petitioner disclosed that, in fact, he had lied to the police and the insurance company when giving details regarding the Navigator's disappearance. The petitioner admitted to being at his girlfriend's house on the south side of Allentown (and not at Mr. McNeil's apartment). 1/11/07 Trnscpt. pp. 64-66, ll. 23-13; p. 83, ll. 18-20. He further revealed that Mr. McNeil was the regular operator of the vehicle. *Id.* at p. 66, ll. 14-20.

The second requirement of the corpus delecti rule, that the Commonwealth prove to the jury's satisfaction beyond a reasonable doubt the corpus delecti of the crimes charged, was also demonstrated in the course of the trial. The court, sitting as the fact-finder in the non-jury trial, found that the Commonwealth's evidence proved that the petitioner gave false statements to the insurance company and the police investigators during the initial stages of the investigation into the theft of the Lincoln Navigator. At the conclusion of trial, the court returned a verdict of guilty of insurance fraud and acquitted the petitioner of criminal conspiracy to commit false reports to law enforcement.

## Sufficiency of the Evidence and Materiality of Misrepresentation

The petitioner argues that the evidence presented in the course of the trial was insufficient to establish that the petitioner had committed insurance fraud. The petitioner also asserts that "[t]he alleged misrepresentation, which forms the basis for the criminal surcharge, was de minimis, at best, and does not rise to the level of a material misrepresentation which is actionable under [the] criminal statute." Pa.R.A.P. 1925(b) stmt., p. 2, ¶3.

A person commits insurance fraud if he or she:

"Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim." 18 Pa.C.S. §4117(A)(2).

At the time of trial, Officer Michael Arnold of the Whitehall Township Police Department testified that he prepared an auto theft supplemental form in relation to the stolen vehicle report taken in connection with the disappearance of the petitioner's vehicle. Officer Arnold testified that to complete the report, he asked the petitioner various questions. The officer asked the petitioner for his location at the time of the theft. The petitioner responded that he was inside of his friend's apartment and that he was in possession of the vehicle at the time of the theft. Officer Arnold also stated that the petitioner never acknowledged another driver of the vehicle.

The petitioner argues that "[t]he evidence presented at trial does not establish beyond a reasonable doubt that the [petitioner's] statement to Ohio Casualty that the car in question was stolen, is fraudulent." Pa.R.A.P. 1925(b) stmt., p. 1, ¶2. In essence, the petitioner argues that the criminal information charges the petitioner with a general material misrepresentation, *i.e.,* falsely reporting petitioner's 1998 Lincoln Navigator stolen. The petitioner claims that evidence presented regarding the petitioner's specific misrepresentations in support of the generalized insurance claim of a stolen car ought not to be considered as a violation of the insurance fraud statute as it is written in the criminal information.

The court relies on the definition of insurance fraud stated above, and specifically on the portion of the definition that states that any material misrepresentation "*in support of* a claim*" (emphasis added) would constitute insurance fraud. During the first day of trial, the court summarized the focus of the crime of insurance fraud as charged against this petitioner as follows:

"I understood this to be that I'm asked to decide whether or not statements were made in the claim upon which the insurance company relied and those statements were in some way materially false which caused the insurance company to act differently than they may have acted if they had gotten proper information initially. And I will boil it down to this. . . . My belief is, he says he was at McNeil's apartment and was there all night and when he comes out in the morning, the car is gone. When, in fact, that wasn't the case. That, for some reason, McNeil had it or it was at McNeil's location, but Tillet wasn't there when the car was stolen and, in fact, finds out about it and then makes the claim. That's what I understand

happened, in short, unless I am mistaken and I could be mistaken." 1/9/07 Trnscpt. pp. 148-49, ll. 13-23, 4-17.

After the court's recitation of the charge against the petitioner, the Commonwealth and both defense counsel made no substantive correction to the court's interpretation of the criminal information or the allegation against the petitioner. The court determined that the evidence showed that the petitioner did "knowingly and with the intent to defraud" presented statements regarding the surrounding circumstances of the vehicle's disappearance to Ohio Casualty *in support of* his claim of a stolen 1998 Lincoln Navigator, and that those statements were false.

The petitioner also disputes whether those statements were "material" to the resolution of the claim.

While there seems to be no appellate authority for criminal cases addressing materiality in the context of insurance fraud, there are a host of civil cases that have tackled the definition. For the purpose of defining "material" as it appears in the statute, these cases are relevant and instructive. For example, the Pennsylvania Superior Court, deciding an insurance fraud case, held in *Tudor Insurance Company v. Township of Stowe,* 697 A.2d 1010, 1016 (Pa. Super. 1997), that a false statement was material if "the insurer relied to its detriment on the false statement in issuing the insurance policy." Likewise, in *TJS Brokerage & Co. Inc. v. Hartford Cas. Ins. Co.,* 2001 WL 1808039, *3 (C.P. Philadelphia Aug. 14, 2001), a common pleas court cited a federal court decision applying Pennsylvania law to an insurance fraud question. The federal trial court held that a false statement is material if it concerns a subject relevant and germane to the insurer's investigation as it was then proceeding, or if a

reasonable insurance company, in determining its course of action, would attach significance to the fact misrepresented. See *Saracco v. Vigilant Ins. Co.,* 2000 WL 202274, at *5 (E.D. Pa. Feb. 22, 2000). See also, *Hepps v. General Am. Life Ins.,* 1998 WL 564497, at *3 (E.D. Pa. 1998); *Parasco v. Pacific Indem. Co.,* 920 F. Supp. 647, 654 (E.D. Pa. 1996). While Pennsylvania courts are not bound by federal court opinions, decisions of federal courts construing Pennsylvania law have persuasive authority. See *Hutchison v. Luddy,* 763 A.2d 826, 837 n.8 (Pa. Super. 2000).

Similarly, other courts have considered materiality in the context of an insurer's post-loss investigation—the circumstances in this case. For example, in *Parasco,* 920 F. Supp. at 654, the court held that "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding," citing *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 183 (2d Cir. 1984). The *Parasco* court also acknowledged the definition of materiality as discussed in *Long v. Insurance Co. of North America,* 670 F.2d 930, 934 (10th Cir. 1982). That court said, "[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Id.*

Likewise, the Pennsylvania Superior Court has discussed materiality under circumstances where a fraud occurs in the inducement of the insurance contract. "Information is said to be material if knowledge or ignorance of it would naturally influence the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing the premium rate." *A.G.*

*Allebach Inc. v. Hurley,* 373 Pa. Super. 41, 52, 540 A.2d 289, 295 (1988), citing *Baldwin v. Prudential Insurance Co.,* 215 Pa. Super. 434, 437, 258 A.2d 660, 662 (1969). See also, *Rohm and Haas Company v. Continental Casualty Company,* 566 Pa. 464, 477, 781 A.2d 1172, 1179 (2001) (adopting the *Allebach* materiality standard). This court can find no case law mandating that the definition of "material" should change just because the fraud or misrepresentation occurs after the execution of the contract, rather than prior.

Additionally, the *Parasco* court recognized that materiality is measured at the time the insured made the representation. 920 F. Supp. at 654. This is so because in hindsight, the significance of an untruth may turn out to be greater or less than expected. Hindsight, however, is irrelevant to the materiality of an insured's misrepresentation to an insurer. See *TJS Brokerage,* 2001 WL 1808039 at n.4, citing *Longobardi v. Chubb Ins. Co. of New Jersey,* 582 A.2d 1257, 1262-63 (N.J. 1990). Furthermore, because the *Parasco* court relied on *Fine,* this court also finds the Second Circuit's discussion of when materiality is relevant to be enlightening:

"Is a false statement material only if it relates to a matter or subject which ultimately proves to be decisive or significant in the ultimate disposition of the claim, or is it sufficient that the false statement concerns a subject reasonably relevant to the insurance company's investigation at the time? The law is clear that the materiality of false statements during an insurance company investigation is not to be judged by what the facts later turn out to have been. The purpose of a provision requiring an insured to submit to an examination under oath is to enable the insurance company to acquire knowledge or

information that may aid it in its further investigation or that may otherwise be significant to the company in determining its liability under the policy and the position it should take with respect to a claim. Thus the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." 725 F.2d at 183.

In this instance, the Commonwealth presented evidence and testimony which indicated that the petitioner offered different versions of the events surrounding the theft of the vehicle. Testimony from Officer Arnold and retired insurance inspector for the Ohio Casualty Insurance Company, Edward Duffy, indicated that the petitioner initially provided statements that he was the primary driver of the vehicle and that he had left the vehicle outside of his co-defendant's apartment. The petitioner later made a statement to Detective Richard London of the Lehigh County Insurance Fraud Task Force indicating that he, in fact, had not been at the co-defendant's residence and had lied to both the police officer and the insurance company when he reported the car stolen. See 1/11/07 Trnscpt., pp. 64-65, ll. 23-16. The petitioner further acknowledged that he deceived the insurance company and the police in order to avoid further inquiry into the circumstances of the theft. Testimony was also presented regarding the way in which the information provided by the petitioner was used in the insurance company's investigation of the vehicle theft. Attorney Steven Williams, representing the insurance company, testified that information about the circumstances surrounding how a vehicle was stolen and the way in which it was discovered stolen is important in determining what parties may have been at the root of the vehicle's disap-

448

pearance. He indicated that based on surrounding information, the investigation may proceed in a certain way. For example, Attorney Williams testified that the petitioner stated that he had possession of the keys to the vehicle and that co-defendant McNeil only drove the vehicle occasionally. Attorney Williams stated that had the petitioner given him information that McNeil was actually the primary driver, he "would have directed [his] investigation in a different manner, [a]cquired more information as to why that person had possession of the vehicle and similar questions. 1/10/07 Trnscpt. p. 9, ll. 8-18; p. 6, ll. 15-21; p.7, ll. 16-21. Due to the fact that the false statements initially provided by the petitioner to the police officer and the insurance investigator were provided knowingly and with the intent to defraud, either to protect his co-defendant or for another reason, and because the court accepted the testimony that a reasonable insurance company would have proceeded in a different fashion had they been provided the true circumstances of the theft, the statements that the petitioner falsely provided were material to the claim.

## ORDER

And now, November 29, 2007, it appearing that the petitioner has filed a notice of appeal in the above-captioned matter; and it further appearing that the accompanying memorandum opinion satisfies the requirements of Pa.R.A.P. 1925(a); it is hereby ordered that the clerk of courts, criminal, transmit the record in the above-captioned matter to the Superior Court forthwith.